USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 03/05/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
NATIONAL LABOR RELATIONS BOARD,  :
                                 :
                    Petitioner,  :
                                 :           23-MC-51 (VEC)
          -against-              :
                                 :           ORDER & JUDGMENT
                                 :
CHARLES THOMAS SCHMIDT, PARTY    :
SHUTTLE TOURS, LLC, CITY INFO EXPERTS, :
LLC, and UNIVERSAL SMART CONTRACTS, :
LLC,                             :
                                 :
                    Respondents. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This case arises from a decade-long dispute regarding the wrongful termination of an employee for union-related activity by New York Party Shuttle, LLC ("NYPS"). Op. ("the Opinion"), Dkt. 22 at 1–2. After the National Labor Relations Board ("NLRB") awarded the employee backpay and NYPS refused to pay, the NLRB began investigating Respondents' relationship with NYPS. *Id*. at 2. The NLRB moved to compel Respondents to comply with certain administrative subpoenas served as part of that investigation and for an award of fees and costs. Pet., Dkt. 1. The Court granted the NLRB's motion. Op. at 1. The NLRB now moves for a determination of the amount of fees and costs due. Mot., Dkt. 26. For the reasons stated below, the Court awards the NLRB $38,123.00 in fees and $321.42 in costs.

## BACKGROUND

On February 28, 2023, the National Labor Relations Board ("NLRB") moved to compel Respondents Charles Thomas Schmidt, Party Shuttle Tours, LLC, City Info Experts, LLC, and Universal Smart Contracts, LLC to comply with certain subpoenas *duces tecum* and for an award of fees and costs. *See* Pet. In lieu of opposing the Petition, Respondents moved to dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (3), and, in the alternative, to transfer the case to the Southern District of Texas. *See* Mot., Dkt. 9.

On August 4, 2023, the Court ordered the NLRB to perfect service because the NLRB had improperly served Respondents by certified mail. Order, Dkt. 17. The Court also warned Respondents that it was inclined to grant the NLRB's motion to compel once service was perfected and encouraged the parties to meet and confer on a schedule for compliance. *Id*. at 3. On August 9, 2023, the NLRB moved for reconsideration of the portion of that order requiring it to perfect service, Mot., Dkt. 18, and the Court denied that motion the following day, Order, Dkt. 19.

On September 11, 2023, the parties filed a joint letter reporting that Respondents did not intend voluntarily to comply with the administrative subpoenas. Letter, Dkt. 21. On November 16, 2023, the Court ordered Respondents to comply with the subpoenas by November 30, 2023, denied Respondents' motion to dismiss or to transfer, awarded the NLRB fees and costs, and ordered the parties to meet and confer regarding the amount of fees and costs. *See* Op. at 10. On December 15, 2023, the parties informed the Court that Respondents had not complied with the subpoenas because Respondent intended to appeal the Opinion and that they had not reached an agreement on the amount of fees and costs. Letters, Dkts. 23–24. On January 12, 2024, Respondents appealed the Opinion.[1] Not. of Appeal, Dkt. 25.

On January 31, 2024, the NLRB filed the instant application seeking a determination of the amount of fees and costs due. Fees Mot., Dkt. 26. Respondents opposed the motion on the grounds that (1) an award of fees and costs is improper, (2) the NLRB did not clarify the portion

---

[1] As noted in the February 1, 2024, Order, the Court retains jurisdiction to adjudicate claims for attorneys' fees notwithstanding the filing of an appeal. Order, Dkt. 27 (citing *Tancredi v. Metro Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004)).

2

of the award it sought from each Respondent, (3) the NLRB's requested hourly rates are unreasonable, (4) the NLRB's requested hours are unreasonable, and (5) the affidavits submitted in support of the NRLB's motion are improper.  Resp'ts Opp., Dkt. 28.

## DISCUSSION

### I.   Legal Standard

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Cruz v. Local Union No. 3 of Int'l Bhd. of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  Courts have broad discretion to determine the amount of attorneys' fees that is reasonable.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . .").  When attorneys are employed by the government, fees are calculated "according to the prevailing market rates in the relevant community."  *N.L.R.B. v. Local 3, Int'l Bhd. of Electrical Workers*, 471 F.3d 399, 406 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

### II.   Calculation of Fees Award

The Court finds that the NLRB's requested fees and costs are reasonable and awards the NLRB $38,123 in fees and $321 in costs.

#### A.  Respondents' Motion for Reconsideration Is Denied

Respondents — citing no caselaw — seek reconsideration of the Court's order holding that the NLRB is entitled to fees and costs because "[n]othing in Respondents' behavior justifies any kind of deterrent, sanction, or punishment."  Resp'ts Opp. ¶ 4.  The standard under which courts evaluate a motion for reconsideration "is strict, and reconsideration will generally be

denied unless the moving party can point to controlling decisions or data that the court overlooked . . . ." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Respondents have not cleared that high bar.

An award of fees and costs is appropriate because Respondents were granted multiple opportunities "to provide the documents in response to the subpoena[s] and [their] failure to do so caused the Board to spend time and effort, at taxpayers' expense, in attempting to secure compliance with the subpoena[s]." *N.L.R.B. v. Dan Callahan, Inc.*, No. 18-MC-879, 2018 WL 4190153, at *6 (E.D.N.Y. Aug. 7, 2018) (internal quotation omitted), *report and recommendation adopted*, 2018 WL 4185704 (E.D.N.Y. Aug. 31, 2018); *see also* Fed. R. Civ. P. 37(a)(5)(A) (noting that courts may award attorneys' fees to a party prevailing on a motion to compel).

### B.  Fees and Costs Are Awarded Against Respondents Jointly and Severally

Courts have discretion to award fees and costs against defendants jointly and severally when, as here, litigation is focused on "activities involving the opposing parties jointly." *Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586, 2017 WL 1215004, at *7–8 (S.D.N.Y. Mar. 31, 2017) (cleaned up) (collecting cases); *see also Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 437 (2d Cir. 2002) ("Normally, the total amount of an attorney's fee award is imposed jointly and severally upon all defendants found liable . . . ."). Joint and several liability is especially appropriate because the Respondents appear to be related. *See, e.g.*, Pet. Opp., Dkt. 14 at 1–2, 5.

### C.  The Fitzpatrick Matrix's Hourly Rates Are Reasonable

Because the NLRB's Contempt, Compliance, and Special Litigation Branch is located in Washington, D.C., the relevant private market is the D.C. area. *See N.L.R.B. v. DN Callahan*,

No. 18-MC-879, 2018 WL 7076167, at *2 (E.D.N.Y. Oct. 31, 2018) (applying DC hourly rates as set forth in the United States Attorney's fee matrix for costs incurred on a motion to compel), *report and recommendation adopted*, Order, No. 18-MC-879 (E.D.N.Y. Dec. 20, 2018).  The Court calculates fees with reference to the Fitzpatrick Matrix, a dataset of attorneys' fees awarded in complex federal litigation in the United States District Court for the District of Colombia that is maintained by the United States Attorney's Office for the District of Colombia.  *See* NLRB Mem. Ex.3 ("Fitzpatrick Matrix"), Dkt. 26.[2]

### 1. Fitzpatrick Matrix

The Fitzpatrick Matrix's precursor, the Laffey Matrix, was widely adopted as the reference point for attorneys' fees awarded in complex federal litigation and calculated according to the prevailing market rates in the D.C. area, including in NLRB subpoena enforcement cases brought in this Circuit.  *See DN Callahan*, 2018 WL 7076167, at *2; *see also Local 3*, 471 F.3d at 407 (upholding calculation of attorneys' fees); NLRB Mem., *N.L.R.B. v. Local 3, Int'l Bhd. of Elec. Workers*, No. 04-5912, 2005 WL 5661022, at *37 n.15 (2d Cir. Nov. 18, 2005) (noting that the Special Master calculated fees with reference to the Laffey Matrix).  Courts have embraced the Fitzpatrick Matrix as an improvement on the Laffey Matrix.  *See J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 16 (D.D.C. 2023) ("[T]he newly developed Fitzpatrick Matrix . . . represents a clear improvement over . . . [the] Laffey Matrix." *Id*. (cleaned up).); *Brackett v. Mayorkas*, No. 17-988, 2023 WL 5094872, at *5 (D.D.C. Aug. 9, 2023) (applying the Fitzpatrick Matrix).

Respondents argue that the Fitzpatrick Matrix, which also provides the prevailing market rates in the D.C. area for complex federal litigation, is inapplicable because this matter was not complex.  Resp'ts Opp. ¶ 10.  The Court disagrees.  *See, e.g.*, *N.L.R.B. v. Cobalt Coal Ltd.*, No.

---

[2]     The Fitzpatrick Matrix may also be found at *Civil Division*, U.S. Atty's Office D.C. (Oct. 11, 2023), https://perma.cc/4EKC-DNYB.

17-MC-18, 2018 WL 5292052, at *2 (W.D. Va. Oct. 25, 2018) (awarding the NLRB attorneys' fees according to the Laffey Matrix for litigation related to a motion to compel because "NLRB work is highly specialized"); *D.L. v. District of Columbia*, 256 F.R.D. 239, 243 (D.D.C. Mar. 11, 2009) (utilizing the Laffey Matrix to award attorneys' fees for a motion to compel).

Courts rely on several factors in determining whether a matter constitutes "complex federal litigation," including "procedural complexity [and] time-consuming delays." *Thomas v. Moreland*, No. 18-800, 2022 WL 2168109, at *4 (D.D.C. June 16, 2022). Because Respondents have failed to comply with the NLRB's subpoenas, the NLRB was forced to engage in extensive motion practice, including filing a motion to compel and opposing a motion to dismiss or to transfer. These motions involved the application of specialized rules governing service of process, subject-matter jurisdiction, and personal jurisdiction peculiar to an administrative subpoena enforcement action. Op. at 2–6. Furthermore, the NLRB was confronted with numerous, time-consuming delays resulting from Respondents' continued, obstreperous refusal to comply with the subpoenas and repeated evasion of service.[3] Op. at 10.

### 2. Calculation of Hourly Rates

The NLRB interprets the Fitzpatrick Matrix to supply an hourly rate of $485 for work Ms. Leonard performed until February 5, 2023, the point at which she had one year of experience, and an hourly rate of $502 for work she performed after that date, when she had two years of experience. NLRB Reply Ex. 1 ("Leonard Decl."), Dkt. 29 ¶¶ 4, 7–8. The NLRB

---

[3] Respondents argue that calculating attorneys' fees due to the government according to the Fitzpatrick Matrix is absurd because, according to the matrix, a junior attorney like Ms. Leonard "would cost the NLRB $1,004,000.00 per year," when she presumably earns a much lower salary. Resp'ts Opp., Dkt. 28 ¶ 11. But just "because government attorneys receive a fixed salary and do not bill a client for their services, a proportionate share of attorneys' salaries does not necessarily correlate to expenses actually incurred in pursuing a given case," including "foregone opportunities to pursue other cases according to its statutory duty." *N.L.R.B. v. Local 3, Int'l Bhd. of Electrical Workers*, 471 F.3d 399, 407 (2d Cir. 2006).

similarly interprets the Fitzpatrick Matrix to supply an hourly rate of $568 for work Mr. Boehm performed prior to August 8, 2023, the point at which he had six years of experience, and an hourly rate of $584 for work performed after that date, when he had seven years of experience. NLRB Reply Ex. 2 ("Boehm Decl."), Dkt. 29 ¶¶ 6–8.

The Fitzpatrick Matrix, however, utilizes "billing years," which need not correspond exactly to years of experience.[4]  An attorney bills at his or her highest "billing year" rate for the duration of a calendar year, regardless of when in the year he or she began working.  To illustrate this approach, the Fitzpatrick Matrix states, "an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year.  As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience." Fitzpatrick Matrix cmt. 4.  Accordingly, the Court calculates Ms. Leonard's hourly rates for work at 2 billing years, or $502, and Mr. Boehm's hourly rates at 7 billing years, or $584.[5]

### D. The Hours Billed by the NLRB Are Reasonable

The NLRB has sufficiently documented the hours reasonably spent by counsel on this matter.[6]  The requested hours are appropriate in light of the complexity of the underlying

---

[4]  The notes to the Fitzpatrick Matrix explains that "[a]lthough preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year." Fitzpatrick Matrix cmt. 7.

[5]  The NLRB only seeks fees for work performed in 2023.

[6]  Respondents' grasping objection that the NLRB's sworn statements were not proper declarations because they began with a statement that the declarant swore under penalty of perjury "as follows" instead of ending with a statement that the declarant swore under penalty of perjury "that the foregoing is true and correct" is moot in light of the NLRB's submission of revised declarations.  *See* Resp'ts Opp. ¶ 16; NLRB Reply Exs. 1–2, Dkt. 29.

Respondents further object on the grounds that the NLRB's attorneys did not explicitly state that their time logs were based on personal knowledge or clarify which time entries they excluded as "excessive, redundant, or otherwise unnecessary."  Resp'ts Opp. ¶¶ 17–18.  It is beyond cavil that an attorney has personal knowledge of his or her own work.  The NLRB's reason for excluding certain time entries is irrelevant because the NLRB is not billing for that time.

litigation, the numerous motions involved in this matter, the effort expended to effect process on Respondents who evaded service, and the specialized nature of the rules governing jurisdiction and venue in administrative subpoena enforcement actions.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (listing factors to consider in determining reasonableness of award, including complexity, resources required, and timing demands).

Accordingly, the Court awards NLRB $27,961.40 for Ms. Leonard's time (55.7 hours at an hourly rate of $502) and $10,161.60 for Boehm's time (17.4 hours at an hourly rate of $584), for a total of $38,123.

### III.   The NLRB's Requested Costs Are Reasonable

The Court finds that the NLRB's request for $321.42 in costs incurred related to service of process and the provision of courtesy copies in compliance with the Undersigned's Individual Practices is reasonable.  *See* NLRB Mem. Exs. 5–6, Dkt. 26.

### CONCLUSION

For the foregoing reasons, Petitioner's motion for attorneys' fees and costs is GRANTED.  The Court awards the NLRB $38,123.00 in fees and $321.42 in costs for which all Respondents are jointly and severally liable.  The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 26.

**SO ORDERED.**

Date:  March 5, 2024
       New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**